**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| LMN Express, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Foundation Risk Partners Corporation, a Florida corporation; RT Specialty, an Illinois limited liability company; and American Automobile Insurance Company,<br><br>Defendants. | No. CV-24-01625-PHX-SHD<br><br>**ORDER** |

At issue is Defendant Foundation Risk Partners Corporation's ("Foundation Risk Partners") Motion for Summary Judgment ("Motion") (Doc. 43). The Motion is fully briefed, and I heard oral argument on October 15, 2026. (Docs. 50, 51, 52, 55.) For the reasons stated below, the Motion will be granted.

## I. BACKGROUND

### A. Procedural History

This case arises from the cancellation of Plaintiff LMN Express, LLC's ("LMN Express") business automobile insurance policy (the "Policy") in October 2023. LMN Express filed its complaint in Maricopa County on April 9, 2024, and then filed a First Amended Complaint on April 26, 2024. (Doc. 1-1 at 5, 26.) On June 3, 2024, LMN Express filed the operative Second Amended Complaint ("SAC"). (*Id.* at 48.) LMN Express named Foundation Risk Partners, American Automobile Insurance Company

("AAIC"), and RT Specialty as defendants. (*Id.*) AAIC removed the case on July 1, 2024. (Doc. 1.) LMN Express brought a claim for declaratory judgment against all defendants (Count 1), a negligent misrepresentation claim against only Foundation Risk Partners (Count 2), and a breach of contract and the duty of good faith and fair dealing claim against only RT Specialty (Count 3). (Doc. 1-1 at 51–53.) It alleged that it incurred damages due to the cancellation of the Policy, including business interruption damages, payroll expenses, and the increased cost of substitute insurance coverage. (Doc. 44 at ¶ 17; Doc. 51 at ¶ 17.) LMN Express stipulated to dismiss both RT Specialty and AAIC, (Docs. 14, 29), so Foundation Risk Partners is the only remaining defendant. (Doc. 44 at ¶ 16.)

Count 2 rests on a single alleged misrepresentation, as set forth in the Second Amended Complaint: that Foundation Risk Partners represented that "payment of the remaining premium under the Policy would result in AAIC's reinstatement of the Policy." (Doc. 1-1 at 52.) The factual allegations supporting that claim are sparse. LMN Express alleges that in October 2023, after it emailed Foundation Risk Partners, "an FRP representative" told it that paying the remaining balance of $46,532.70 would result in reinstatement. It alleges that the representative said so "based on [her] conversation with Defendant RT Specialty," and that AAIC had communicated to RT Specialty that payment would result in reinstatement. (*Id.* at 50.) It alleges that it relied on that statement when it made the payment. (*Id.*) LMN Express does not identify the speaker, the date or medium of the communication, or the words used in the alleged misrepresentation. It alleges nothing about what Foundation Risk Partners knew or should have known that made the statement false or careless when made. It alleges only that the Policy "was never reinstated." (*Id.* at 51.)

**B. Undisputed Facts**[1]

Foundation Risk Partners maintains that it did not act negligently and that it fulfilled

[1] The facts set forth below are based on the Affidavit of Andrea Fitterling, to which LMN Express generally objects for lack of foundation and as stating legal conclusions under Rule 56(c)(2). (*See, e.g.*, Doc. 51 at ¶¶ 1, 4, 8, 10, 12, 19, 21–24.) I need not resolve these objections because I consider the Fitterling affidavit only to the extent LMN Express

its role as an insurance broker appropriately. (Doc. 43 at 9.) It now seeks summary judgment on LMN Express's negligent misrepresentation and declaratory relief claims. (*Id.* at 1.) The relevant facts are summarized below and are undisputed, unless otherwise noted.

LMN Express is a delivery service partner that exclusively handles Amazon deliveries. (Doc. 44 at ¶ 1.) LMN Express operates about thirty delivery trucks and must carry specialized insurance coverage, as required by Amazon. (*Id.* at ¶¶ 2–3; Doc. 51 at ¶¶ 1–3.) To meet Amazon's insurance requirements, LMN Express engaged Foundation Risk Partners to obtain a business automobile insurance policy. (Doc. 44 at ¶ 5; Doc. 51 at ¶ 5.) Foundation Risk Partners obtained coverage through RT Specialty, which then arranged coverage through AAIC on March 13, 2023, for the Policy period of March 24, 2023 to March 24, 2024. (Doc. 43 at 2; Doc. 44 at ¶ 6; Doc. 51 at ¶ 6.) Andrea Fitterling, then Foundation Risk Partners's account manager, handled the procurement of insurance for LMN Express. (Doc. 46 at ¶ 2.) Foundation Risk Partners sent LMN Express the Policy and estimated premium on March 16, 2023. (Doc. 44 at ¶ 7; Doc. 51 at ¶ 7.)

Between June and September 2023, LMN Express received three cancellation notices for failure to pay the premiums due on the Policy. (Doc. 44 at ¶¶ 8–12; Doc. 51 at ¶¶ 8–12.) AAIC sent LMN Express the first cancellation notice on June 8, 2023, advising that full payment of the premium was due by June 24, 2023 to avoid cancellation of the Policy. (Doc. 44 at ¶ 8; Doc. 51 at ¶ 8.) On June 27, 2023, AAIC mailed LMN Express a Reinstatement Notice, notifying LMN Express that the Policy was reinstated as a result of LMN Express's late payment. (Doc. 44 at ¶ 9; Doc. 51 at ¶ 9.)

Three weeks later, on July 18, 2023, AAIC sent LMN Express a second cancellation notice, advising that full payment of the premium was due by August 3, 2023 to avoid cancellation of the Policy. (Doc. 44 at ¶ 10; Doc. 51 at ¶ 10.) After LMN Express's late

---

does not object to it, or to the extent LMN Express does not dispute an underlying fact. In any event, most of the boilerplate objections lack merit on their face.

payment, on July 31, 2023, AAIC mailed LMN Express a second Reinstatement Notice, notifying LMN Express that the Policy was reinstated. (Doc. 44 at ¶ 11; Doc. 51 at ¶ 11.)

On September 1, 2023, AAIC sent LMN Express a third cancellation notice, advising that full payment of the premium was due by September 17, 2023 to avoid cancellation of the Policy. (Doc. 44 at ¶ 12; Doc. 51 at ¶ 12.) The deadline passed, and the Policy was cancelled effective September 17, 2023. (Doc. 44 at ¶¶ 12, 14; Doc. 44-6 at 2.) Two days later, on September 19, 2023, LMN Express reported a claim under the Policy (the "September 19 claim"). (Doc. 44 at ¶ 15; Doc. 51 at ¶ 15.) On October 2, 2023, Foundation Risk Partners advised LMN Express that AAIC would reinstate the Policy upon receipt of full payment and an executed statement of no loss. (Doc. 44 at ¶ 13; Doc. 44-5 at 3; Doc. 51 at ¶ 13.) Specifically, Fitterling emailed LMN Express's sole member, Wael Yaziji, that AAIC required full payment and a signed statement of no loss, and she wrote, "I am so sorry that I contributed to the problem with your account." (Doc. 50-4; Doc. 51 at ¶¶ 35–37.) Fitterling's statements in this email appear to form the basis for the negligent misrepresentation claim. (*See* Doc. 1-1 at 52.)

On October 3, 2023, LMN Express paid the premium and provided an executed statement of no loss certifying that there were no losses that might give rise to a claim from the period during which the Policy lapsed, September 17, 2023 to October 3, 2023. (Doc. 44 at ¶ 14; Doc. 51 at ¶ 14.) Foundation Risk Partners states, and LMN Express agrees, that the September 19 claim renders the executed statement of no loss inaccurate. (Doc. 44 at ¶ 15; Doc. 51 at ¶ 15.)

The Policy was not reinstated. (Doc. 44 at ¶ 23; Doc. 1-1 at 51.) LMN Express alleges that it did not learn this until about October 24, 2023. (Doc. 1-1 at 51.) It later obtained coverage from another carrier at a higher premium, which it says made its Amazon work cost-prohibitive, and it has not been able to reactivate its contractual relationship with Amazon. (Doc. 50-2 at ¶¶ 9–11; Doc. 51 at ¶¶ 29, 42–44.) LMN Express claims damages that include payroll expenses during the shutdown and the increased cost of substitute coverage. (Doc. 44 at ¶ 17; Doc. 50-2 at ¶ 12; Doc. 51 at ¶ 45.)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Not all facts are material, and not all disputes are genuine. A "fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). Courts "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference[s] in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).

At summary judgment, there are shifting burdens of production. The moving party bears the initial burden of "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the burden is on the nonmoving party to "cit[e] to particular parts of materials in the record" to establish that a genuine issue of material fact *does* exist. Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 322–23.

If the "moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citations omitted). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.* (citations omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). At bottom, the "inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Id.* at 255.

## III. DISCUSSION

Foundation Risk Partners moves for summary judgment on the two claims that remain against it: declaratory relief (Count 1) and negligent misrepresentation (Count 2). (Doc. 43.) As to Count 2, it argues that LMN Express cannot identify any evidence that it made a false statement in the record, and that, in any event, the economic loss doctrine bars the claim. (*Id*. at 5–9.) As to the requested declaratory relief in Count 1, Foundation Risk Partners argues that it is either moot or advisory because Count 2 fails and the other defendants have been dismissed. (*Id*. at 11–13.) I address the negligent misrepresentation claim first and then LMN Express's request for declaratory relief.

### A. Negligent Misrepresentation

A negligent misrepresentation claim "is one governed by the principles of the law of negligence." *Van Buren v. Pima Cmty. Coll. Dist. Bd.*, 546 P.2d 821, 823 (Ariz. 1976). A plaintiff bringing a negligent misrepresentation claim must prove that: "(1) the defendant supplied the plaintiff with false information; (2) the defendant intended to 'guide' the plaintiff in [their] decision making; (3) the defendant failed to exercise reasonable care . . . in communicating the information; (4) the plaintiff relied upon the information; (5) the plaintiff's reliance was justified; and (6) the plaintiff suffered damages." *Lalangan v. Pennington*, 2022 WL 504477, at *3 (D. Ariz. Feb. 18, 2022). "A promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation." *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992).

#### 1. Failure to Identify Evidence Showing a False Statement

LMN Express's negligent misrepresentation claim—as set forth in the SAC—rests on its allegation that, in October 2023, a Foundation Risk Partners representative told it that paying the remaining premium balance would result in AAIC's reinstatement of the Policy. (Doc. 1-1 at 50, 52.) Foundation Risk Partners argues that summary judgment should be granted due to the absence of evidence that this, or any other statement it made, was false. (Doc. 43 at 5–6; *see also* Doc. 44 at ¶¶ 19–20 (stating that Foundation Risk

Partners only relayed information from RT Specialty and AAIC and neither made, nor intended to make, any false statement).) LMN Express therefore has the burden to come forward with evidence of a false statement. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103 (where moving party shows "that the nonmoving party does not have enough evidence on an essential element to carry its ultimate burden of persuasion at trial," the nonmoving party "must produce evidence to support its claim").

LMN has failed to satisfy its burden because it has not identified any evidence of a false statement by Foundation Risk Partners, either in its summary judgment briefing or in response to questions posed at oral argument.[2] Its Controverting Statement of Facts, (Doc. 51), cites Fitterling's October 2023 emails, but offers them to show only that she expressed regret and accepted responsibility. (Doc. 51 at ¶¶ 30, 35–38.) LMN Express does not identify which statement in those emails is false, nor does it adduce evidence demonstrating that any statement made in those emails was false. (*See generally* Doc. 51.) It is inconceivable—and no reasonable jury could find—that Fitterling apologized for making a false statement in the very same email that purportedly contains the false statement. Because the record does not identify the false information on which Count 2 depends, no reasonable jury could find that LMN Express satisfied the first element of a negligent misrepresentation claim.[3]

---

[2] At oral argument, LMN Express's counsel was thoroughly confused as to the nature of the negligent misrepresentation claim he asserted on behalf of his client. He was unable to identify the specific false statement by Foundation Risk Partners that underpinned the claim, let alone identify any evidence establishing the falsity of any statement.

[3] There are several ways LMN Express could have satisfied its burden of showing a false statement. For example, evidence that Foundation Risk Partners told LMN Express that AAIC had approved reinstatement upon payment, when AAIC had not, could have supported a misrepresentation of existing fact and created a genuine factual dispute. *Cf. St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 816–17 (Ariz. 1987) (upholding a negligent misrepresentation verdict based on evidence that an insurer verified coverage without adequately investigating the basis for its representations and that the hospital justifiably relied on those verifications).

**2. Economic Loss Doctrine**

LMN Express's negligent misrepresentation claim is also barred by the economic loss doctrine. In Arizona, a contracting party is limited to its contractual remedies for purely economic loss related to the subject of the contract. *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.,* 223 P.3d 664, 665 (Ariz. 2010). The doctrine extends to misrepresentation claims, *Cook v. Orkin Exterminating Co.*, 258 P.3d 149, 152–53 (Ariz. Ct. App. 2011), and courts in this District have applied it to negligent misrepresentation claims, *see Del Mar Land Partners, LLC v. Stanley Consultants, Inc.*, 2011 WL 2692959, at *4 (D. Ariz. July 12, 2011).

In the SAC, LMN Express alleges the misrepresentation occurred "in a contractual transaction." (Doc. 1-1 at 52.) And its claimed losses are business interruption, payroll, higher premiums, and lost Amazon opportunities. (Doc. 44 at ¶ 17; Doc. 1-1 at 51.) Those losses are purely economic and arise from the lapse of the Policy that Foundation Risk Partners was engaged to procure. The record shows no physical injury or property damage caused by Foundation Risk Partners. The economic loss doctrine therefore independently bars LMN Express's negligent misrepresentation claim.[4]

**3. LMN Express's Shift of Theory**

In its Response and Controverting Statement of Facts, LMN Express relies on the opinion of its expert, Burke A. Christensen, to argue that Foundation Risk Partners misrepresented facts to a third party—AAIC—and that this purported misrepresentation forms the basis of its negligent misrepresentation claim. Specifically, LMN Express argues that Foundation Risk Partners told AAIC that LMN Express had filed the September 19 claim, and that Foundation Risk Partners knew this was untrue because another entity, not LMN Express, had reported that claim. (*See* Doc. 50 at 6; *see also id.* at ¶ 27.) LMN Express's attempt to rely on this new alleged misrepresentation fails for several

---

[4] LMN Express did not substantively challenge the application of the economic loss doctrine its negligent misrepresentation claim, effectively conceding the issue. *See Garcia v. Salt River Project Agric. Improvement & Power Dist.*, 618 F. Supp. 2d 1092, 1098 (D. Ariz. 2007) (recognizing that unanswered argument may be treated as conceded).

independent reasons.

First, an expert opinion, without supporting facts, cannot create a genuine issue of material fact. *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) (finding that an expert "must back up his opinion with specific facts" in the context of a motion for summary judgment); *see also Florez v. Sargeant*, 917 P.2d 250, 255–56 (Ariz. 1996) (expert affidavits opposing summary judgment must set forth specific facts supporting the opinion). Here, the report does not provide the facts that support a coherent theory of liability against Foundation Risk Partners for negligent misrepresentation.[5]

Second, the alleged misrepresentation set forth in the Christensen report is not pleaded in the SAC. A plaintiff may not raise a new theory for the first time in opposing summary judgment. *Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014).

Third, the alleged false statement was made by Foundation Risk Partners to AAIC, not to LMN Express, so LMN Express could not have relied on it. *See Lalangan*, 2022 WL 504477, at *3 (explaining that a negligent misrepresentation claim requires that the plaintiff justifiably relied on the false statement). Because LMN Express could not have relied on a statement made to a third party, the statement made to AAIC cannot possibly satisfy the second, fourth, and fifth elements of a negligent misrepresentation claim. *See id*. Foundation Risk Partners is entitled to summary judgment on Count 2.

**B. Declaratory Relief**

Upon removal, a claim under Arizona's Declaratory Judgments Act is treated as a claim under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. *757BD LLC v. Nat'l Union Fire Ins. Co.*, 330 F. Supp. 3d 1153, 1159 (D. Ariz. 2016). The federal Declaratory Judgment Act authorizes a court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). It "creates only a remedy, not a cause of action," *Leigh-*

[5] Foundation Risk Partners objects to the Christensen report as unsworn hearsay. (Doc. 52 at 5.) I need not resolve the objection because the Christensen report, even if considered, cannot salvage LMN Express's negligent misrepresentation claim.

*Pink v. Rio Props.*, 849 F. App'x 628, 630 (9th Cir. 2021), and relief may be denied when it "will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties," *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1010 (9th Cir. 2023) (quotation marks omitted).

LMN Express seeks three declarations: (1) the duty of care owed by RT Specialty; (2) "whether Defendants breached a duty to disclose accurate information to Plaintiff"; and (3) the apportionment of damages among defendants. (Doc. 1-1 at 52.) Each of the requested declarations fails.

As for the first request, a declaration about RT Specialty's duties would not resolve any controversy between the remaining parties. As for the third requested declaration, because RT Specialty and AAIC have been dismissed, (Doc. 44 at ¶ 16), apportioning damages among defendants is meaningless when only one remains. The second requested declaration also fails because it rests on the same theory as LMN Express's negligent misrepresentation claim. Because that claim fails, LMN Express cannot obtain relief on the same theory merely by requesting a declaration of liability. *See City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022).

Foundation Risk Partners is therefore entitled to summary judgment on Count 1.

## IV. CONCLUSION

LMN Express's negligent misrepresentation claim fails both because there is no evidence that Foundation Risk Partners made a false statement and because it is barred by the economic loss doctrine. LMN Express's attempt to shift theories by relying on its expert report does not save its negligent misrepresentation claim. Additionally, its declaratory relief claim fails because the requested declarations are moot or derivative of the failed negligent misrepresentation claim. Foundation Risk Partners is therefore entitled to summary judgment on both counts.

Accordingly,

///

**IT IS ORDERED granting** Defendant Foundation Risk Partners's Motion for Summary Judgment, (Doc. 43).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly, and to close this case.

Dated this 23rd day of October, 2026.

Honorable Sharad H. Desai
United States District Judge